CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 27, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **MAURICE D. BOYKINS** | ) | **Case No. 7:22-cv-726** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **OFFICER TAYLOR, et al.,** | ) | |
| | ) | |
| **Defendants.** | | |

**MEMORANDUM OPINION**

Maurice D. Boykins, a Virginia inmate acting *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights by failing to provide him with adequate medical care and retaliating when he exercised his First Amendment rights.[1] Defendant Lt. Fleming filed a motion to dismiss for failure to state a claim. Dkt. 43. This court issued a *Roseboro* Notice on August 23, 2023; however, Boykins has not responded to the motion to dismiss. Defendants Taylor and Holbrook, both correctional officers, moved for summary judgment, asserting that Boykins failed to exhaust his administrative remedies, to which Boykins has responded.[2] Dkt. 39, 46. Because I find Boykins has failed to state a claim against Lt. Fleming, the motion to dismiss will be granted. The motion for summary judgment will also be granted, as Boykins has failed to exhaust his administrative remedies, as required.

---

[1] The alleged incident occurred at Red Onion State Prison; however, Boykins is now housed at New Castle Correctional Facility in Indiana.

[2] Defendants Holbrook and Taylor were initially named as Officer John Doe and Shift Commander John Doe in the Amended Complaint, but were subsequently identified. *See* Dkt. 28, 31.

I.    **Motion to Dismiss**

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Id.* While courts must liberally construe *pro se* complaints, such liberal construction is not without limits and a *pro se* plaintiff still must allege facts that state a cause of action. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

A.    **Facts**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 570). Construing the Amended Complaint in this manner, Boykins alleges the following facts giving rise to his claims. A nurse found Boykins unresponsive on August 13, 2021. She ordered that Boykins, who had not eaten for weeks, be taken to the hospital for fluids. Am. Compl., Dkt. 23 at 2. Officers Taylor and Holbrook escorted Boykins to Norton Community Hospital, using a wheelchair, "due to [Boykins's] weakness," to get him to the van for transport and into the hospital for treatment. *Id.* at 3. While preparing to treat Boykins with I.V. fluids, a hospital worker questioned Boykins about why he had "been going so long without eating or drinking fluids." *Id.* However, as soon as Boykins began to talk about his abusive treatment at the prison, describing unfamiliar pills in his food or empty trays of food,

Officer Taylor called his supervisor [Lt. Fleming][3] and told him that Boykins was complaining to

the hospital staff about prison abuse and they "were ready to bring [him] back." *Id.* Officer

Taylor instructed Officer Holbrook that they were taking Boykins back "for running his mouth"

and that the prison official he spoke to on the phone supported his decision. *Id.* Boykins and the

hospital staff pleaded with the officers to allow Boykins to receive treatment, specifically the I.V.

fluids, because without food and fluids he could suffer permanent damage or death. *Id.* at 4.

However, Officers Taylor and Holbrook placed Boykins in the wheelchair, told him not to move

or talk, did not let Boykins consume the juice and sandwich offered by the hospital staff, and

refused to sign "papers to relieve the hospital from being responsible for what happened next

which resulted in [Boykins] going unconscious a few days later." *Id.* at 4.

### B. Motion to Dismiss for Failure to State a Claim

Defendant Lt. Fleming moves to dismiss the Amended Complaint, arguing that Boykins

has not sufficiently alleged that Lt. Fleming knew Boykins would be returned to the prison

without receiving any medical treatment. [4] Lt. Fleming also alleges that Boykins "freely admits

not knowing who was on the receiving end of the phone call," and that Boykins's assertion that it

was the watch commander–Lt. Fleming–is only speculation.

Lt. Fleming mischaracterizes the Amended Complaint as naming the "watch commander"

as the defendant. The Amended Complaint names "whoever [Officer Taylor] was on the phone

with," i.e. the individual who Officer Taylor called from the hospital. Dkt. 23. Boykins describes

---

[3] Counsel for Lt. Fleming filed a Notice of Appearance stating that Defendant Shift Commander John Doe is Lt. Fleming, because counsel "identified Lt. Jordan Fleming as being the Shift Commander at the time in question." Dkt. 31, 44.

[4] Despite the Court issuing a *Roseboro* Notice advising Boykins of his response deadlines (Dkt. 45), Boykins has not responded. Accordingly, the motion to dismiss will be considered unopposed. However, the court still has an obligation to review the motion to dismiss to ensure that dismissal is proper. *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n. 3 (4th Cir. 2014).

that individual as Officer Taylor's supervisor and likely a watch commander. Lt. Fleming has

identified himself as the shift commander on duty during the time in question.  Because the jail is

in a better position than Boykins to know the individual with whom Officer Taylor spoke, and Lt.

Fleming identified himself as the relevant shift commander and responded to the Amended

Complaint, I do not agree that Boykins's allegations of his identity are speculative.

However, even accepting the allegations that Officer Taylor spoke with Lt. Fleming from

the hospital as true, the Amended Complaint fails to state a claim against Lt. Fleming. Officer

Taylor relayed to Lt. Fleming that Boykins was "telling the hospital staff that the prison was

abusing [him]" and that "they were ready to bring [him] back." After ending the phone call,

Officer Taylor reported that the supervisor (Lt. Fleming) supported their decision. Dkt. 23. These

allegations are insufficient to plausibly allege that Lt. Fleming was deliberately indifferent to

Boykins's serious medical needs, or that he retaliated against Boykins for exercising his First

Amendment Rights.

A prison official's "deliberate indifference to serious medical needs of prisoners

constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."

*Estelle v. Gamble*, 239 U.S. 97, 102 (1976) (internal quotation marks and citations omitted). A

claim of deliberate indifference has two components: an objective prong and a subjective prong.

"The plaintiff must show that he had serious medical needs, which is an objective inquiry, and

that the defendant acted with deliberate indifference to those needs, which is a subjective

inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). "[A]

defendant acts with deliberate indifference if he had actual knowledge of the [plaintiff's] serious

medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937

F.3d 348, 357 (4th Cir. 2019) (internal quotation marks omitted).

Here, Boykins fails to allege the second prong, that Lt. Fleming acted with deliberate indifference to his serious medical needs. Boykins does not allege that Lt. Fleming had actual knowledge of Boykins's serious medical needs; that Lt. Fleming was aware of any risks posed by the officers' actions or inactions; or that Lt. Fleming disregarded those risks. The Amended Complaint alleges only that Lt. Fleming was told that Boykins was complaining to the hospital about prison abuse; that the officers were ready to bring Boykins back; and that Lt. Fleming approved the transport. There is no allegation that Lt. Fleming knew that Boykins had not received medical treatment; that Officers Taylor and Holbrook intended to return Boykins to the jail without treatment; and/or that the transport was against the hospital staff's advice.

Boykins also fails to state a retaliation claim for exercising his First Amendment rights. To state such a claim against Lt. Fleming, Boykins must plausibly allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that adversely affected his First Amendment rights; and (3) that there was a causal relationship between the inmate's protected activity and the defendant's conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). Boykins fails to allege the third prong–any causal relationship between his alleged First Amended protected activity and Lt. Fleming's conduct. Boykins does not allege that Lt. Fleming either knew Boykins had not yet received medical care, or that he authorized the transport back to the prison facility to punish Boykins for talking the hospital staff. Lt. Fleming's alleged approval of Boykins's transport back to prison after being told that Boykins was complaining of prison abuse to the hospital staff fails to plausibly state a retaliation claim against Lt. Fleming under § 1983.

Any attempt by Boykins to allege supervisory liability against Lt. Fleming for the actions of the other defendants also fails. Respondeat superior liability is inapplicable in § 1983 cases.

*Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009). A plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Further, the Amended Complaint contains no facts to support a claim of supervisory liability against Lt. Fleming for his action or inaction in the training, supervision, or control of his subordinates. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Accordingly, the Amended Complaint fails to state a claim against Lt. Fleming and his motion to dismiss is granted.

## II.    Summary Judgment

The court should grant summary judgment only when the pleadings and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. On summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Id.* at 255. However, when a motion for summary judgment is properly supported by affidavits, the nonmoving party may not rest on the mere allegations or denials in his pleadings. *Anderson*, 477 U.S. at 256. Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find in his favor. *Id.* at 256-57. Verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

## A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must follow each step of the established grievance procedure that the facility provides to inmates and meet all deadlines within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Failing to properly exhaust administrative remedies prior to filing suit is an affirmative defense that defendants must prove. *Jones*, 549 U.S. at 216. If a prisoner failed to exhaust his administrative remedies, he may still escape summary judgment by showing that the remedies were not "available" to him. *Ross v. Blake*, 578 U.S. 632, 643 (2016). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "The burden of showing that administrative remedies were unavailable lies with the plaintiff." *Mann v. Scott*, No. 0:14-3474, 2015 WL 5165198, at *4 (D.S.C. Sept. 1, 2015).

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints. *See gen.* Aff. Vilbrandt, Dkt. 40-1. The VDOC grievance procedure requires that before submitting a formal grievance an inmate must demonstrate that he has made a good faith effort to informally resolve his complaint, which he may do by submitting an Informal Complaint form. *Id.* Staff should respond in writing within 15 days and, if dissatisfied with the response, the inmate must

submit a Regular Grievance on the issue within 30 days after the event of which he complains, attaching the Informal Complaint. There are three levels of review available for regular grievances and grievances "must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing suit." *Id.* "Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal to the next level of review." *Id.*

The Institutional Grievance Coordinator at Red Onion State Prison, C. Vilbrandt, who maintains the grievance files and oversees the daily operations of the grievance department at the prison, reviewed Boykins's grievance file regarding his claims in this lawsuit. Dkt. 40-1, ¶ 9. On August 24, 2021, Boykins filed an Informal Complaint regarding the allegations in this lawsuit that defendants, after taking him to the hospital, refused to let the hospital staff treat him.[5] Dkt. 40-1, at 23. Boykins's Informal Complaint should have received a response within 15 days. *Id.* No response was provided–which Vilbrandt cannot explain, writing–"I do not know why Boykins Informal Complaint . . . wasn't provided with a response." *Id.* ¶ ll. Despite not receiving any response, defendants argue that Boykins should have used his Grievance Receipt, which he received after filing the Informal Complaint, to file a Regular Grievance. "If the inmate doesn't receive a response to his Informal Complaint within [the] 15-day time period, he may file a Regular Grievance." *Id.* Defendants argue that by not filing a Regular Grievance, Boykins failed to exhaust his administrative remedies as required.

Boykins responds that defendants obstructed his access to administrative remedies, rendering them unavailable. Boykins states that he was on Grievance Restriction, which prevented him from "filing an appropriate complaint." Dkt. 46. He also claims that he made

---

[5] The Informal Complaint is Log. No. ROSP-21-INF-01548.

multiple attempts to exhaust his administrative remedies but was prevented from doing so by prison officials. Specifically, Boykins writes that he saw correctional officer Atkins throw his mail in the trash, which proved officer Atkins was stealing his mail, including grievances, request forms, and letters. Dkt. 46-1. Boykins claims he twice attempted to file Grievance forms regarding this matter that "never made it back to me" and "even worse" were never logged. *Id.* Boykins attaches an Offender Request dated October 4, 2021, complaining that he had inadequate information about his Grievance Restriction, and specifically asking "what happen[ed]" to the response to the Informal Complaint he filed on August 24, 2021 regarding the allegations in this lawsuit. Dkt. 46-2. On October 5, 2021, Boykins received a response explaining that he was placed on Grievance Restriction on September 3, 2021, and that while on Restriction he can only file one Informal Complaint and one Regular Grievance per week. *Id.* The response did not explain why he received no response to his August 24, 2021 Informal Complaint.

Here, Boykins took the first step to exhaust his administrative remedies by filing an Informal Complaint on August 24, 2021 regarding the incident at issue. He received a Grievance Receipt, which Boykins attached to his response to the motion for summary judgment.[6] Dkt. 46-2. Because Boykins did not receive a response to his Informal Complaint within the allotted 15 days, the grievance procedure required him to file his Informal Complaint Receipt, along with a Regular Grievance, which he did not do. Dkt. 40-1. Accordingly, Boykins failed to exhaust his administrative remedies.

---

[6] The Grievance Receipt, dated August 24, 2021, summarizes the complaint as "On August 13, 2021 when I arrive at Norton Community Hospital I was force to leave by Officers Taylor and the other guy that escorted me to the hospital with him. They refuse to let me get treatment." Dkt. 46-2.

Boykins's arguments that the administrative remedies were unavailable to him also fail. Although Boykins was under a Grievance Restriction during the applicable time period, this restriction did not prevent him from exhausting his claim, as he was permitted to file one informal complaint and one grievance per week. "Courts have held inmates are not prevented from exhausting their administrative remedies by being on grievance restrictions," where inmates under a restriction "[are] not completely prevented from filing or pursuing any grievance at all." *Rucker v. Stirling*, No. 1:19-310-MGL-SVH, 2020 WL 5984435, at *4 (D.S.C. Mar. 6, 2020) (citing *Pearson v. Taylor*, 665 F. App'x 858, 867-68 (11th Cir. 2016) (rejecting argument that plaintiff was unable to exhaust administrative remedies where he was prevented from having more than two grievances active at any one time).

Likewise, Boykins's vague and conclusory allegations that prison staff prevented him from exhausting administrative remedies by stealing or discarding his mail fail to create a genuine issue of material fact sufficient to withstand summary judgment. Significantly, Boykins does not specify a date when he attempted to file a Regular Grievance regarding this incident. On October 4, 2021, Boykins complained about never having received a response to his August 24, 2021 Informal Complaint. This establishes Boykins knew he had not received a timely response, but he still failed to file the Regular Grievance and attach the Informal Complaint Receipt as required by the grievance procedure. Boykins's claim that prison staff were "stealing all [his] mail" is belied by various other grievances and communications that Boykins attaches to his motion, which the jail received and processed during this time period, including: the receipt for the Informal Complaint dated August 24, 2021; his letter dated September 9, 2021 complaining about the grievance coordinator, and stamped received on October 12, 2021; the Offender Request dated October 4, 2021, responded to on October 5, 2021; and the Offender Grievance

Response – Level I, dated October 13, 2021. "[A] a grievance process is rendered 'unavailable' under the PLRA only if an inmate actually is prevented from using it." *Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021) (finding the inmate failed to exhaust his administrative remedies and noting that he failed to explain why he was able to file many other grievances while on lockdown, "but not the one required here"); *see also Pickens v. Lewis*, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) (collecting cases finding prisoner's conclusory allegations that prison staff interfered with his administrative remedies failed to create a genuine issue of material fact).

Because Boykins failed to exhaust his administrative remedies regarding the claims in this lawsuit, I will grant defendants' motion for summary judgment.

### III.    Conclusion

Accordingly, Lt. Fleming's motion to dismiss will be granted and Lt. Fleming will be dismissed from this lawsuit. Additionally, Officers Taylor and Holbrook's motion for summary Judgment will be granted.

An appropriate order accompanies this opinion.

Entered:  March 27, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge